IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRUCE KOENIG                        *
       Plaintiff,
    v.                              *       CIVIL ACTION NO. JFM-13-3599

WEXFORD MEDICAL SERVICES            *
COLIN OTTEY
AVA JOUBERT                         *
GREG FLURY
UNKNOWN TRIAGE NURSES               *
       Defendants.

                *****

## MEMORANDUM

Pending is defendants' motion for summary judgment, which remains unopposed.[1]   ECF No. 11.   Plaintiff has filed a motion to amend, solely seeking to modify the names of two defendants.   ECF No. 18.   The motion shall be granted.[2]   Upon review of the pleadings filed, I find a hearing in this matter unnecessary.   *See* Local Rule 105.6 (D. Md. 2014).

### Background

Plaintiff, an inmate confined at Western Correctional Institution ("WCI"), alleges that he has been denied treatment for his conditions, which includes Meniere's disease, autoimmune degenerative spinal disease, a torn rotator cuff, sciatica, neuropathy, and vertigo.   Plaintiff claims that physician's orders issued in early 2012, were cancelled after his previous civil rights case was dismissed.[3]   ECF No. 1.   Defendants provide in excess of 145 pages of medical records and

---

[1]   On May 20, 2014, plaintiff was issued notice pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975)  *See* ECF No. 8.   Although granted several extensions of time to file an opposition, plaintiff has not filed a response.

[2]   The Clerk shall modify the docket to reflect the correct names of defendants Wexford Health Sources, Inc. and Ava Joubert-Curtis.

[3]   Plaintiff raised similar medical complaints in 2012 while confined in the North Branch Correctional Institution.   *See Koenig v. Stouffer, et al.*, Civil Action No. JFM-12-690 (D. Md.).   On

defendant Ottey's affidavit in support of their motion for summary judgment.  ECF No. 7.  They

assert that Plaintiff is a 65-year old male under care at the Chronic Care Clinic ("CCC") with a

medical history significant for hyperlipidemia, dermatitis, depressive disorder, asthma,

hypertension, chronic pain, arthritis, bowel and bladder incontinence, and Meniere's disease.[4]

ECF No. 7 at Ex. 1; Ex. 2 at Ottey affidavit.  The record shows that plaintiff was evaluated in the

North Branch Correctional Institution CCC for asthma, hypertension and chronic pain.    He was

prescribed Gabapentin or Neurontin, and Motrin for his discomfort.   In January of 2013, he

received a renewal of his special needs physician directives for his bottom-tier bunk/lower tier

and no-work orders for non-clerical duties.  In February of 2013, plaintiff was seen by Dr. Ottey

for a scheduled provider visit regarding his chronic pain.   He was continued on his pain

medication and encouraged to continue his self-management exercises.  *Id.*

Throughout early 2013, plaintiff was continuously seen by prison nurses, physician's

assistants ("PA"), and doctors.   He was examined for his requests of a renewal and an increase

to his Neurontin medication, twice sought a new crutch/cane tip, voiced concerns about the

adequacy and number of his medical supplies, and sought transdermal patches for his vertigo.

His requests were accommodated, with the exception of the increase to his Neurontin and

transdermal patches.   The PA advised plaintiff that the current Neurontin dosage would be

allowed to accumulate and that plaintiff would be reevaluated at his next CCC visit with

laboratory results.   Laboratory tests results, completed on May 25, 2013, were unremarkable.

Plaintiff was informed that the contracted pharmacy would not approve the patches and he was

---

February 19, 2013, summary judgment was granted in favor of defendants in that case.   The judgment
was affirmed by the United States Court of Appeals for the Fourth Circuit on May 1, 2014.

[4]        Meniere's disease is a disorder of the inner ear that causes spontaneous episodes of
vertigo, a sensation of a spinning motion and a fluctuating hearing loss, ringing in the ear (tinnitus), and
sometimes a feeling of fullness or pressure in the ear.  In many cases, Meniere's disease affects only one
ear.  *See* http://www.mayoclinic.org/diseases-conditions/menieres-disease/basics/definition/con-20028251

referred to a physician for his transdermal patches and when seen in the CCC on June 13, 2013, he was found to be in no apparent distress and his current medications were continued and renewed.  ECF No. 7, Ex. 1; Ex. 2 at Ottey affidavit.

The medical record provided by defendants shows that plaintiff's sick-call slips were responded to by medical personnel  He requested an orthopedic chair or insert and to be seen for back pain by an orthopedic surgeon and was seen in the CCC for same on June 26, 2013.  The evaluating PA noted that plaintiff had been seen in the Kernan Orthopedic facility in June of 2012,[5] where it was reported that plaintiff only had degenerative changes in his lumbar spine with no evidence of anklylosing spondylitis.[6]  The PA noted that corrections staff reported that plaintiff already had a chair and that additional chairs were not issued at the discretion of medical staff.  Finally, it was noted that plaintiff did not have a history of falling and that when previously seen by a doctor, no transdermal patch was recommended.  *Id*.

Plaintiff requested renewal of his medical shower status and it was approved for another year by Dr. Ottey.   He complained of Meniere's disease attacks, and when seen by a physician in the CCC in September of 2013, it was noted that his arthritis pain was generalized and aggravated by standing, walking, climbing stairs, and cold rainy weather.  He was, however, able to ambulate with a cane. Plaintiff's musculoskeletal system showed no deformities, but he

---

[5]     In *Koenig v. Stouffer, et al.*, Civil Action No. JFM-12-690 (D. Md.), exhibits showed that on June 7, 2012, Koenig was seen at Kernan Hospital for a rheumatology consult for evaluation of possible ankylosing spondylitis.  Dr. Bernadette Siaton found it unlikely that he had the condition, but instead indicated that he had a mechanical degeneration of his spine, given his history of heavy lifting and motorcycle accidents.  She noted he had a decreased range of motion in the lumbar spine and numerous tender points, but normal reflexes and symmetric muscle tone and bulk.   She recommended that he continue on his pain regimen of Motrin and Ultram and that a lumber spine and pelvic x-ray be obtained. *Id*., ECF No. 27 at Ex. A.

[6]     Ankylosing spondylitis is an inflammatory disease that can cause some of the vertebrae in the spine to fuse together. This fusing makes the spine less flexible and can result in a hunched-forward posture. *See* http://www.mayoclinic.org/diseases-conditions/ankylosing-spondylitis/basics/definition/con-20019766

appeared unsteady.  He was continued on his current pain management regimen.    ECF No. 7, Ex. 1.

Plaintiff filed multiple sick-call slips seeking an orthopedic-style chair or insert for back pain and renewal of his medical assignments.    On October 10, 2013, he was removed from the medical examination room by correctional officers for refusing to be seated when requested and was observed by prison custody staff to be walking around his cell without the use of his cane. Upon arrival in the medical examination room, however, he was observed to be stumbling and moving with an unsteady gait.  Plaintiff refused to be seated and was removed by prison custody staff for refusing to follow orders and was returned to his cell.  *Id.*

He continued to file sick-call slips in November of 2013, for pain in his neck, shoulder, back, left hip and knee and both feet.    On November 5, 2013, plaintiff was seen by a prison nurse, who observed that he was "alert and oriented," but had him removed from the medical examination room because he refused to answer medical assessment questions.   The nurse indicated that plaintiff responded to prison custody personnel standing a sizeable distance away, but "pretends" to have a hearing impairment when with medical staff.  She further noted that plaintiff's CCC medications were current and that he was only seeking non-chronic care medications of Neurontin and Meclizine.[7]  *Id.*, Ex. 1.

On November 19, 2013, plaintiff was seen by a PA, who noted that plaintiff was not suffering from bone or joint pain or swelling and that he observed no weakness.  Plaintiff passed an audiometry[8] exam in both his ears, was found to have normal musculature with no skeletal

---

[7]      Meclizine is used to prevent and treat nausea, vomiting, and dizziness caused by motion sickness.    It    is    most    effective    if    taken    before    symptoms    appear.    *See* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682548.html

[8]      An audiometry exam tests the ability to hear sounds.   Sounds vary based on their loudness (intensity) and the speed of sound wave vibrations (tone).  Hearing occurs when sound waves

tenderness or joint deformity, and no edema or cyanosis was noted in his extremities.   His

current medications were continued and he was advised to follow his exercise program.   He was

also seen by a prison nurse for medical supplies and medication renewals on November 22,

2013.   He was referred to a provider for his medication renewal.   On November 25, 2013

laboratory samples were collected and the results were found to be normal.   ECF No. 7, Ex. 1.

On December 3, 2013, plaintiff was seen by a PA for a CCC visit for his asthma,

hypertension, gastro-esophageal reflux ("GERD") and allergies.   The physical examination

showed no objective findings of distress.   Plaintiff was continued on his current medication

regime and it was recommended that he continue his exercise program.   He was seen by a nurse

on December 11, 2013, for his complaints of back and knee pain, shoulder discomfort, and

vertigo.  He was provided with a hot and cold compress.  *Id.*, Ex. 1.

On January 14, 2014, plaintiff was transferred to WCI.   At his medical screening he was

approved for general population and referred for further assessment.   His medications were

transferred with him the day of his movement.   On February 11, 2014, he was seen in the CCC

by a WCI nurse.   He voiced no complaints regarding pain or medical assignments and his

medications were renewed, including the Meclizine.   Lab work was ordered.   Six days later

plaintiff was seen for complaints of allergies, pain, and dry skin and he sought to renew the

Neurontin medication which had been discontinued in November of 2013.   He was referred for

evaluation and seen by a nurse practitioner on February 19, 2014, for complaints of pain in his

lower back, which radiated down his legs.   He requested Neurontin.   A non-formulary request for

---

stimulate the nerves of the inner ear. The sound then travels along nerve pathways to the brain.  Sound
waves can travel to the inner ear through the ear canal, eardrum, and bones of the middle ear (air
conduction). They can also pass through the bones around and behind the ear (bone conduction).  *See*
http://www.nlm.nih.gov/medlineplus/ency/article/003341.htm

Gabapentin was placed.  *Id.*  Plaintiff was seen by a physician on March 11, 2014, due to his back pain.  The physical examination evinced no objective abnormalities.  Plaintiff was continued on his medications.

Analysis

Eighth Amendment Claim

Summary judgment is properly granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007) (citing Fed. R. Civ. P. 56(c)).  The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *See Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).  If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial.  To satisfy this burden, the non-moving party "must produce competent evidence on each element of his or her claim."  *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999).  Although the court "must draw all reasonable inferences in favor of the non-moving party," that party "may not create a genuine issue of material fact through mere speculation, or building one inference upon another."  *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Runnenbaum v. NationsBank*, 123 F.3d 156, 163 (4th Cir. 1997).  Indeed, the existence of only a "scintilla of evidence" is not enough to defeat summary judgment.  *Anderson*, 477 U.S. at 251.  Instead, the admissible evidentiary materials submitted must show facts from which the finder of fact could reasonably find in favor of the non-moving party. *Id.*

6

The usual practice on a motion for summary judgment is to construe the facts in the light most favorable to the non-moving party, *see Seabulk Offshore, Ltd. v. Am. Home Assur. Co.,* 377 F.3d 408, 418 (4th Cir. 2004); however, because defendants' motion for summary judgment is unopposed, all facts are taken from the motion for summary judgment.   A court does not, however, automatically grant an unopposed motion for summary judgment.   The court shall grant summary judgment in favor of the moving party only if appropriate.  *See Custer v. Pan American Life Ins. Co.,* 12 F.3d 410, 416 (4th Cir.1993) ("[T]he court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.").

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia,* 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone,* 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter,* 501 U.S. 294, 297 (1991).   In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976).   Deliberate indifference to a serious medical need requires proof that, objectively, the inmate plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994).   Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with

unqualified access to health care).   Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40.   "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) quoting *Farmer* 511 U.S. at 844.   If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844.   Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The undisputed evidence presented establishes that medical providers did not recklessly refuse to assess and treat plaintiff's conditions.   He was continuously seen, examined and treated for his pain and dizziness.   The right to treatment "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir.1977).   Plaintiff's disagreement with the treatment or the manner in which the treatment was carried out is not a basis for an Eighth Amendment claim.   The fact that plaintiff's requests for a particularized treatment were not approved, simply does not reflect deliberate indifference on the

part of defendants for his filing a previous civil rights action.  To the extent some of plaintiff's complaints have gone unaddressed, "an inadvertent failure to provide adequate medical care does not amount to deliberate indifference."  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Plaintiff's grievances with the medical decisions made regarding what tests and treatments are necessary in light of the symptoms presented are reflective of his frustration, but  "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a §1983 claim unless exceptional circumstances are alleged."  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985), citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir. 1970).  There are no exceptional circumstances alleged in this case.

The record evidence indicates that plaintiff's requests were considered, his needs were addressed, and he was encouraged by medical staff to keep them informed of any further episodes or serious symptoms.  Based upon the undisputed, objective evidence in the record, defendants are entitled to the granting of summary judgment in their favor.[9]  A separate order follows.

Date:   December 30, 2014                        ____/s/_____
                                                  J. Frederick Motz
                                                  United States District Judge

---

[9]     In light of this decision, the complaint against defendants "Unknown Triage Nurses" shall be dismissed.